UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMENEND MATTHEWS, | ) | CIVIL ACTION NO. 3:18-cv-0515 |
| Plaintiff | ) | |
| | ) | (MARIANI, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| SHERRY BARBOUR, *et al.*, | ) | |
| Defendants | ) | |

MEMORANDUM

On March 5, 2018, Plaintiff Tamenend Matthews (hereinafter "Plaintiff") initiated this *pro se* action against the following Defendants: (1) Sherry Barbour, Records Supervisor at SCI Camp Hill; (2) Diane Yale, Records Supervisor at SCI Dallas; (3) Lawrence Mahally, Superintendent at SCI Dallas; and (4) Justin Adams, Counselor at SCI Dallas. *Matthews v. Barbour*, 3:18-cv-00515 (M.D. Pa. Mar. 5, 2018), (Doc. 1). Along with his Complaint, Plaintiff filed a Motion requesting leave of court to proceed *in forma pauperis* (Doc. 2).

Based on the information provided it appears that that Plaintiff's Motion requesting leave of court to proceed *in forma pauperis* should be granted. When granted leave to proceed *in forma pauperis*, Plaintiff is subject to the screening provisions in 28 U.S.C. § 1915(e). *See Atamian v. Burns*, 236 F. App'x 753, 755 (3d Cir. 2007) ("[T]he screening procedures set forth in 28 U.S.C. § 1915(e) apply to *in forma pauperis* complaints filed by prisoners and non-prisoners alike."). Under this statute, the Court is required to dismiss any action that is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28

U.S.C. § 1915(e)(2)(B). *See Collins v. Cundy*, 603 F.2d 825, 828 (10th Cir. 1979) ("[T]here is no constitutional right to the expenditure of public funds and the valuable time of federal courts to prosecute an action which is totally without merit.").

After reviewing Plaintiff's Complaint, I conclude that it fails to state a claim upon which relief may be granted. Although Plaintiff's Complaint, as written, would typically be subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B), I will grant Plaintiff an opportunity to cure the deficiencies noted herein before making a recommendation to the District Court.

I. FACTUAL ALLEGATIONS AND PRODEDURAL HISTORY

On March 5, 2018, Plaintiff filed a Complaint with this Court. (Doc. 1). Plaintiff's Complaint alleges that he was possibly detained in SCI Dallas longer than the sentences imposed by the Lackawanna County Court of Common Pleas in violation of his Eighth Amendment right under the Constitution of the United States. *See id.*

Plaintiff alleges that on February 2, 2016, he was incarcerated at SCI Dallas, serving a parole violation sentence of twenty four (24) months and twenty eight (28) days. *Id.* He claims that this parole violation sentence had a "controlling maximum date of February 5, 2016." *Id.*

On February 2, 2016, the Lackawanna County Court of Common Pleas "resentenced" Plaintiff to nine (9) to twenty-four (24) months for possession with intent to deliver followed by three years of probation for criminal use of a communication facility. *See id.* Plaintiff states that he was not informed how much time served he was credited at his resentencing. *Id.*

On or around February 4, 2016, Plaintiff met with an unnamed parole staff member at SCI Dallas. *Id.* The unnamed staff member allegedly presented Plaintiff with a Probation Agreement Form reflecting a five year probation sentence. *Id.* Plaintiff refused to sign and explained to the unnamed staff member that on February 2, 2016, he had been resentenced to only three years of probation with respect to his criminal use of a communication facility conviction. *Id.* Plaintiff claims the unnamed staff member responded by saying, "I have nothing reflecting that," and indicated that she would look into it. *Id.*

On February 5, 2016, the day he alleges his parole violation sentence expired, Plaintiff wrote a request to the Records Department at SCI Dallas, supervised by Defendant Diane Yale, to inquire about his new sentence and whether his time served had been credited. *Id.* On or around February 24, 2016, an unnamed records specialist informed Plaintiff that "nothing is showing in the system," and that he must "wait on records at SCI Camp Hill to update the system." *Id.*

On or around February 28, 2016, Plaintiff wrote a request to Defendant Justin Adams, Plaintiff's Institutional Block Counselor at SCI Dallas, inquiring about his new sentence. *Id.* Plaintiff alleges he informed Mr. Adams that Plaintiff, by his own calculation, "was approaching [his] parole minimum" in connection to his new convictions. He also informed Mr. Adams that he should be meeting with parole staff. *Id.* On or about March 1, 2016, Mr. Adams responded by informing Plaintiff that "when parole wants to see you they will let you know." *Id.*

On March 27, 2016, an Officer Ferrera told Plaintiff that he "wasn't supposed to be there" and that Plaintiff should pack his things. *Id.* Mr. Adams informed Plaintiff that he was going home. *Id.* Plaintiff was released that same day. *Id.*

The next day, March 28, 2016, Plaintiff met with an unnamed Lackawanna County Adult Probation Supervisor who showed Plaintiff "a court order from [Plaintiff's] resentencing on February 2, 2016, that credited [Plaintiff] with about seven-hundred and ten (710) days on [his sentence]" in the "underlying criminal matter." *Id.* Plaintiff asserts that he was never given a copy of this order and that he does not know the exact number of days he was credited. *Id.*

Plaintiff provides no documentation of any sentencing orders for any of his criminal charges or resentencing hearings. However, Plaintiff notes that he is filing *pro se* and that he seeks assistance in procuring documents from the Pennsylvania Department of Corrections and the Lackawanna County Court of Common Pleas. *Id.*

Plaintiff includes with his Complaint a copy of a "DC-16E Status Summary," which he later received upon being committed to SCI Camp Hill for an unrelated matter. This form indicates that Plaintiff has no active detainers and that since Plaintiff's last DC16, one detainer was deleted on February 22, 2016. *Id.* In the "Remarks" section of this form is typed "Re-entry." Plaintiff claims that this "Re-entry" was "done by Jane Doe Record Specialist at SCI Camp Hill upon receipt of the sentencing order received from February 2, 2016." *Id.*

Plaintiff names the following four defendants and seeks to hold them liable in both their individual and official capacities: (1) Sherry Barbour, Records Supervisor at SCI

Camp Hill; (2) Diane Yale, Records Supervisor at SCI Dallas; (3) Lawrence Mahally, Superintendent at SCI Dallas; and (4) Justin Adams, Counselor at SCI Dallas. *Id.*

II. **LEGAL STANDARD FOR REVIEWING COMPLAINTS FILED BY *PRO SE* PLAINTIFFS PROCEEDING *IN FORMA PAUPERIS***

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by litigants given leave to proceed *in forma pauperis*. Specifically, the Court is obliged to review the complaint in accordance with 28 U.S.C. § 1915(e)(2), which provides, in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>     (A) the allegation of poverty is untrue; or
>     (B) the action or appeal—
>         (i) is frivolous or malicious;
>         (ii) fails to state a claim on which relief may be granted; or
>         (iii) seeks monetary relief against a defendant who is immune from such relief.

In performing this mandatory screening function, the Court applies the same standard that is used to evaluate motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The United States Court of Appeals for the Third Circuit has observed the evolving standards governing pleading practice in the federal courts, stating that "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009). "[A] complaint must do more

than allege the plaintiff's entitlement to relief." *Id.* at 211. It also "has to 'show' such an entitlement with its facts." *Id.*

To test the sufficiency of the complaint under Rule 12(b)(6), the court must conduct the following three-step inquiry:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010).

A complaint filed by a *pro se* litigant is to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the Plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

III.  ANALYSIS

    A. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EIGHTH AMENDMENT AND FEDERAL RULES OF CIVIL PROCEDURE 8 & 12(b)(6)

Plaintiff raises a false imprisonment claim under the Eighth Amendment.

> "The Eighth Amendment protects convicted individuals from 'cruel and unusual punishments,' and the Third Circuit has recognized a cause of action under this provision for prisoners detained past their scheduled release date." *Davis v. Pa. Bd. Of Prob. & Parole*, Civ. A. No. 05-330J, 2006 WL 3308440, at *7 (W.D. Pa. Oct. 13, 2006) (citing *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993)). The Third Circuit has explained that, "there can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment." *Sample*, 885 F.2d at 1108 (citing *Hutto v. Finney*, 437 U.S. 678, 685 [] (1978), and *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc)). Detention beyond one's maximum release date may be cruel and unusual if it is "totally without penological justification." *Id.* (quotation omitted).

*Wiggins v. McAndrew*, 2018 WL 3727389, *9 (M.D. Pa. 2018) (quoting *Bolsold v. Warden*, 2011 WL 6812902, *6).

The Eastern District of Pennsylvania has stated that "in order to state a viable Eighth Amendment claim for 'incarceration without penological justification,' a complaint must allege the following three elements:

> (1) A prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention. Relevant circumstances in assessing these factors are the scope of the official's duties and the role the official played in the life of the prison."

*Bosold*, at *5.

Here, Plaintiff has not adequately stated an Eighth Amendment claim because he has not alleged that any of the named Defendants had knowledge of his problem or the risk that unwarranted punishment was being inflicted. Moreover, Plaintiff is unable to allege that any prison official failed to act or took only ineffectual action under the circumstances

because Plaintiff has not alleged that he was held past his release date. Indeed, Plaintiff faces an uphill battle because the Complaint reveals that the Plaintiff himself does not know whether he was held past his proper release date.

1. Knowledge

Plaintiff fails to allege that any named Defendants had knowledge of his problem or the risk that unwarranted punishment was being inflicted. First, Plaintiff does not state any facts suggesting that Superintendent Lawrence Mahally had knowledge of any wrongfully extended incarceration or risk thereof. Although he is listed as a Defendant, Mr. Mahally is not mentioned anywhere in the factual allegations of the Complaint. Neither do the allegations suggest that any employee under his supervision knew of a risk of unwarranted punishment. However, even if I were to liberally construe Officer Ferrera's vague and unexplained statement that Plaintiff "wasn't supposed to be there" as evidence that Mr. Mahally knew or should have known of improper prolonged incarceration, Plaintiff fails to allege that Mr. Mahally failed to respond appropriately. (*See infra* Part III.A.2).

Second, Plaintiff alleges that he requested information about his sentence from the records office over which Defendant Diane Yale supervises. Plaintiff does not claim he informed the records office that he was being illegally incarcerated or that there was a risk of such. Plaintiff explains that he received a response from Ms. Yale's records office indicating that they did not yet have the information requested. Wholly missing from Plaintiff's allegations is any indication that Ms. Yale knew or should have known of potential illegal incarceration or risk thereof at that time.

Likewise, Plaintiff states that he informed his Block Counselor, Mr. Adams that he was "approaching [his] parole minimum" and that he should be meeting with parole staff. Mr. Adams informed Plaintiff that parole staff would reach out to Plaintiff when they wanted to. Plaintiff does not allege or explain how his statements could have given Mr. Adams knowledge of illegal detention or of a risk that Plaintiff would not be released at the appropriate time. However, even if I were to so liberally construe these facts to mean that Mr. Adams knew there was a risk of improper prolonged incarceration, nothing in the Complaint indicates that Mr. Adams failed to take effective action. (*See infra* Part III.A.2). Indeed, Plaintiff cannot allege that anyone took ineffective action without alleging that he was in fact held past his legal release date. *See id.*

Finally, Defendant Sherry Barbour is the Records Supervisor at SCI Camp Hill. Apparently, after being released from SCI Dallas, Plaintiff was again incarcerated at SCI Camp Hill on an unrelated matter. Upon entering SCI Camp Hill, Plaintiff was issued a "DC-16E" form that contained certain entries by an unnamed specialist at Ms. Barbour's Records Office. As Plaintiff's Complaint is currently pleaded, I am unable to ascertain the significance of this document or how it could be interpreted to impute knowledge of wrongful incarceration or risk thereof to Ms. Barbour.

Thus, because Plaintiff has not alleged that any named Defendant had knowledge of Plaintiff's potential problem or risk thereof, Plaintiff fails to satisfy the first element of his Eighth Amendment action. Plaintiff does not allege that he notified any of these people that he was being held past his release date or that they knew or should have known of their own accord. Indeed, the Complaint reveals that Plaintiff himself does not have knowledge

pertaining to whether he was held in excess of his sentence. This is because Plaintiff admits he has never seen his resentencing order and does not know how much time served he had been credited. Although Plaintiff alleges the maximum date for his original parole violation was February 5, 2016, he admits he does not have personal knowledge of how his February 2, 2016, resentencing hearing affected his final release date.

2. Failure to Act

Even if I were to liberally construe Plaintiff's Complaint as an adequate allegation that Defendants had knowledge of a risk of prolonged incarceration, Plaintiff's Complaint nevertheless fails because he does not allege that any Defendant failed to adequately act. Indeed he cannot. This is because Plaintiff does not affirmatively allege that he was held past his legal release date. It is impossible to conclude that anyone failed to adequately prevent illegal incarceration when illegal incarceration is not actually alleged. Therefore, Plaintiff fails to satisfy the second element of his Eighth Amendment action.

3. Conclusion

In sum, Plaintiff has not affirmatively alleged that he was held past his proper release date. He admits he is unsure how much time he was credited at his resentencing held on February 2, 2016, and therefore cannot know whether he was released at the proper time. Plaintiff provides no facts that would permit me to conclude that any Defendants knew of a risk of prolonged incarceration or that any Defendant failed to prevent prolonged incarceration. Plaintiff has simply raised the possibility that he was perhaps held past an unknown release date. This is not enough to state a claim under Rule 8 or 12(b)(6), which

require not only that allegations be possible, but plausible. Without sentencing records[1] or at least an allegation that he was in fact held past his release date, this standard is not met.

An appropriate Order will follow.

Date: November 27, 2018

BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge

---

[1] Plaintiff is advised that he can obtain a copy of his February 2, 2016, sentencing order by requesting it from the Lackawanna County Clerk of Judicial Records. Furthermore, as Plaintiff is currently incarcerated at SCI Camp Hill, Plaintiff is advised to consult his Inmate Handbook, issued by the Pennsylvania Department of Corrections, which states: "[An inmate] may request access to information maintained in [his] file by sending a **DC-135A**, **Inmate's Request to Staff Member** to the appropriate staff member. **DC-ADM 003** lists the information that is available and the appropriate staff member to ask." *Inmate Handbook*, Pennsylvania Department of Corrections, p. 26 at F.1 (2017 Edition).